## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**WILLIAM TYRONE COPELAND,**

      **Petitioner,**

**v.**                              **Case No. 5:19cv412-TKW/MAF**

**MARK S. INCH, Secretary,**
**Department of Corrections,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

On or about October 21, 2019, Petitioner William Tyrone Copeland, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On March 4, 2020, Respondent filed an answer, with exhibits. ECF No. 6. Petitioner has not filed a reply, although he was given the opportunity to do so. *See* ECF No. 5.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases. The pleadings and attachments before the Court show the petition should be denied.

## **Procedural Background**

By second amended information filed June 27, 2017, in Jackson

County Circuit Court case number 322017CF00230A, the State of Florida

charged Petitioner William Tyrone Copeland with tampering with a witness

on or between March 3, 2017, and March 5, 2017, contrary to section

914.22(1) and (2)(b), Florida Statutes (2016). Ex. A.[1] Copeland had been

arrested and jailed on January 5, 2017, for domestic violence battery

involving his girlfriend, Renardo Mathis Conyers, and felon in possession of

a firearm. *Id.* The tampering charge arose as a result of law enforcement

monitoring Copeland's phone calls to Conyers from the Jackson County

Jail. *Id.*

Copeland proceeded to trial on June 27, 2017. Ex. B. The defense

presented no witnesses. *Id.* at 125-26. The jury returned a verdict finding

him guilty as charged. *Id.* at 190. On July 11, 2017, the judge adjudicated

him guilty and sentenced him to five (5) years in prison, with jail credit of

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with
Respondent's answer, ECF No. 6.

144 days.  Ex. C (Judgment and Sentence); Ex. D at 35 (transcript of

sentencing hearing).

Copeland appealed his judgment and sentence to the First District

Court of Appeal (DCA), assigned case number 1D17-3141, and raised two

points:

> I.    In failing to provide sufficient evidence that Mr. Copeland
>       used intimidation, force, threats, misleading conduct, or
>       offers of pecuniary gain to influence Renardo Conyers to
>       avoid her deposition, the state did not prove an essential
>       element of tampering, thereby necessitating the court to
>       grant Mr. Copeland's motion for judgment of acquittal.

> II.   The trial court erred in admitting Chief McAlpin's
>       interpretation of certain statements made by Mr.
>       Copeland, as the jury did not require an interpreter to
>       understand them, the testimony went directly to the
>       ultimate issue of Mr. Copeland's guilt, invaded the
>       province of the jury, and was especially prejudicial
>       because it came from a police officer.

Ex. E at 2.  The State filed an answer brief.  Ex. F.  Copeland filed a reply.

Ex. G.  On September 28, 2018, the First DCA per curiam affirmed the

case without a written opinion.  Ex. H; Copeland v. State, 256 So. 3d 129

(Fla. 1st DCA 2018) (table).  By order on November 7, 2018, the First DCA

denied Copeland's motions for rehearing, rehearing en banc, issuance of a

written opinion, and certification.  Ex. I (motions); Ex. J (order).  The mandate issued November 28, 2018.  Ex. K.

As indicated above, Copeland filed a § 2254 petition in this Court on or about October 21, 2019.  ECF No. 1.  He raises one ground:  "The State did not prove the essential elements of tampering with a witness, thereby depriving Petitioner of his liberty without due process, violating his 5th and 14th Amendment rights under the United States Constitution."  *Id.* at 5.  Respondent filed an answer, with exhibits.  ECF No. 6.  Copeland has not filed a reply, although he had the opportunity to do so.  *See* ECF No. 5.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 180-83 (2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" <u>Cullen</u>, 563 U.S. at 181 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011), and <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Id.*

In his § 2254 petition, Copeland asserts "[t]he State did not prove the essential elements of tampering with a witness, thereby depriving Petitioner of his liberty without due process, violating his 5th and 14th Amendment rights under the United States Constitution."  ECF No. 1 at 5.  For his supporting facts, Copeland refers to the attached "Statement of the Facts and Arguments" in "INITIAL BRIEF."  *Id.*  Nothing is attached to his petition, however.  *See* ECF No. 1.

Respondent asserts Copeland has not exhausted this ground because he did not raise "the constitutional dimension of his claim in the state court."  ECF No. 6 at 7.  In particular, Respondent points out that Copeland cited no federal law or constitutional provision in his state briefs, and thus did not provide the state court notice of any federal constitutional claim.  *Id.* at 8-10; *see* Exs. E (Initial Brief), G (Reply Brief).  Respondent further asserts, without waiving the failure to exhaust defense, that Copeland's claim lacks merit.  ECF No. 6 at 11-22.

As Respondent indicates, Copeland did not cite any federal cases or constitutional provisions in the briefs filed in his direct appeal.  *See* Exs. E, G.  Although Copeland's first point raised an insufficiency of the evidence claim in the context of the trial court's denial of his motion for judgment of acquittal, nowhere in his state court argument did he indicate a federal source of law for his claim or even label his claim, or any part thereof, as "federal."  *See* Ex. E at 17-23.  Because he did not alert the state court that his claim included a federal constitutional component, he did not "fairly present" a federal claim to the Florida courts and he is now procedurally barred from asserting it.  *See* 28 U.S.C. § 2254(b)(1); *see, e.g.*, Baldwin v. Reese, 541 U.S. 27, 32 (2004) (explaining that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a

state-court petition or brief, for example, by citing in conjunction with the

claim the federal source of law on which he relies or a case deciding such a

claim on federal grounds, or by simply labeling the claim 'federal'"); *see*

*also, e.g.*, Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 456-57 (11th

Cir. 2015); Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir.

2007).

Even assuming, however, that Copeland could now properly raise his

claim in federal habeas, it lacks merit and should be denied.  In this ground,

Copeland essentially challenges the state trial court's denial of defense

counsel's JOA motion, as presented in the first point of his direct appeal.

*See* Ex. E at 2, 18-23.

The State charged Copeland with tampering with a witness, contrary

to section 914.22, Florida Statutes (2016).  That statute provides:

(1)  A person who knowingly uses intimidation or physical force,
     or threatens another person, or attempts to do so, or
     engages in misleading conduct toward another person, or
     offers pecuniary benefit or gain to another person, with intent
     to cause or induce any person to:

     (a)  Withhold testimony, or withhold a record, document, or
          other object, from an official investigation or official
          proceeding;

     (b)  Alter, destroy, mutilate, or conceal an object with intent to
          impair the integrity or availability of the object for use in
          an official investigation or official proceeding;

(c) Evade legal process summoning that person to appear
as a witness, or to produce a record, document, or other
object, in an official investigation or an official proceeding;

(d) Be absent from an official proceeding to which such
person has been summoned by legal process;

(e) Hinder, delay, or prevent the communication to a law
enforcement officer or judge of information relating to the
commission or possible commission of an offense or a
violation of a condition of probation, parole, or release
pending a judicial proceeding; or

(f) Testify untruthfully in an official investigation or an official
proceeding;

commits the crime of tampering with a witness, victim, or
informant.

§ 914.22(1), Fla. Stat. (2016). "The State may establish that a person

intends to cause, or induce another to withhold testimony, by circumstantial

evidence." Pickett v. State, 254 So. 3d 1162, 1169 (Fla. 3d DCA 2018).

The Eleventh Circuit has explained review of a denial of a JOA

motion:

We review de novo the denial of a motion for judgment of
acquittal, and in reviewing the sufficiency of the evidence
underlying a conviction, we consider the evidence "in the light
most favorable to the government, with all inferences and
credibility choices drawn in the government's favor." United
States v. DuBose, 598 F.3d 726, 729 (11th Cir. 2010) (quoting
United States v. LeCroy, 441 F.3d 914, 924 (11th Cir. 2006)).
Therefore, our review for sufficiency of the evidence inquires
only whether a reasonable trier of fact could find that the
evidence established guilt beyond a reasonable doubt. United
States v. Godinez, 922 F.2d 752, 755 (11th Cir. 1991). "The

question is whether reasonable minds could have found guilt beyond a reasonable doubt, not whether reasonable minds must have found guilt beyond a reasonable doubt." United States v. Bacon, 598 F.3d 772, 775 (11th Cir. 2010) (quoting United States v. Ellisor, 522 F.3d 1255, 1271 (11th Cir. 2008)) (emphasis in original omitted).  Accordingly,

> [i]t is not necessary for the evidence to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt . . . .  The jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial, and the court must accept all reasonable inferences and credibility determinations made by the jury.
>
> United States v. Garcia, 447 F.3d 1327, 1334 (11th Cir. 2006) (internal quotations and citations omitted).  We are "bound by the jury's credibility choices, and by its rejection of the inferences raised by the defendant."  United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005).

United States v. Broughton, 689 F.3d 1260, 1276-77 (11th Cir. 2012) (some citations omitted).  Even if there were conflicts in the testimony at trial, credibility and the probative force of conflicting testimony should not be determined on a motion for judgment of acquittal.  Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974).  In moving for a judgment of acquittal, the movant admits every conclusion favorable to the adverse party that a jury might fairly infer from the evidence.  Id.

In this case, according to the prosecution's theory, Copeland committed the offense of tampering with a witness by (1) knowingly using

or attempting to use intimidation or manipulation or engaging in misleading conduct toward Conyers; (2) doing so to cause Conyers to withhold testimony, not appear, or be absent or testify untruthfully; and (3) regarding her scheduled deposition, which was an official proceeding and affected an official proceeding involving a second degree felony.  Ex. B at 25-26 (opening statement).  The prosecutor asserted Copeland committed this crime when he told Conyers not to go to her deposition, for which she had received a subpoena and which was scheduled for March 13, 2017.  *Id.* at 28.  To prove the case, the prosecution presented recordings of three calls made by Copeland to Conyers from the jail; one call occurred March 3, 2017, and two calls occurred on March 5, 2017.  The prosecution played portions of the three calls during the testimony of Chief Bert McAlpin, Chief of Police, in Sneads, Florida.  Ex. B at 62.

In particular, the court reporter transcribed the first call, which took place March 3, 2017, as follows:

What you going to do, I got appointment (inaudible) on the 13th.

Just don't go.

Huh.

What you going to go for?

I got appointment (inaudible)

What the hell are you doing?  Huh?

(inaudible)

What day are you going (inaudible) f***ing a** --

Baby, I got to, I put you on the speaker so I can hear you good.

*Id.* at 62.  McAlpin testified that he recognized the voices as Copeland and

Conyers, and Conyers was talking about having an appointment on the

13th, which McAlpin testified meant she was referring to the subpoena for

her deposition in the case for which Copeland had been arrested and for

which Conyers was the sole eyewitness.  *Id.* at 62-63; *see id.* at 50-51.

McAlpin testified Copeland was the one asking "what are you going to go

for?" in the recorded call.  *Id.* at 63.  The playing of the call resumed:

Thirteenth.  Why you won't take the three years, you know your hand print on the gun –

Take three years what?

(inaudible)

I ain't taking no mother f***ing three years down no mother f***ing road . . . .

(inaudible)

I ain't fixing to take no three years down no mother f***ing road.

*Id.*  McAlpin testified it was Conyers asking Copeland why did he not take

the three years, and Copeland saying he was not going to take the three

years in state prison, that is "down the road."  *Id.* at 63-64.  The call

recording resumed:

> Babe, your (inaudible) print on the thing, your hand print on the
> gun, you going to have to do three years and like I told, I said I
> don't think so, I said I the one that had the gun, I said Willie
> didn't have no gun.  Then I had, I had told, I had told something
> but I couldn't remember what I told so I got to go in the 13th
> and give a deposition thing (inaudible) talk to talk to her.  I know
> (inaudible), the 13th at 1:30 (inaudible) meet with me, I said
> where are his hand prints (inaudible) I had the gun (inaudible) I
> told her I had the gun at you.

> She say (inaudible) ain't got go, just don't go.

> Just don't go?

> What you going to go for?

> Oh, I'm sorry.  Well they done issued a warrant for me.

> Can't do a goddamn thing.  (inaudible) what the hell they got.

> Oh, okay.  Somebody else told me that.  Your mama talking
> about I need to go.  Why you keep sending her over here, she
> don't even know (inaudible)

> -- (inaudible) goddamn (inaudible) talking about this shit that got
> me (inaudible) mama.

> No, I'm telling you because why she keep running out other
> people, I'm not (inaudible) turning state evidence on myself.
> And my thing is she don't, she don't even know what went on.
> You talking about your mama.  Your mama running down there
> running her damn mouth.

> I ain't, I ain't worried about that.

> (inaudible) worried about (inaudible)

(inaudible)

(inaudible) – where I go.

Only thing you probably can do is go down there and make a statement.  What you wrote down on the paper down there?

I told them, I said when I went, when I went to (inaudible)

Yeah.

I asked them to please drop the charge off of Willie (inaudible) took my medication and I tell (inaudible) I don't take my medication I put stuff, I blame stuff on him that don't be true. And I'm just please asking y'all to drop this charge.  And they done told me (inaudible) charge, that one charge (inaudible) gun charge when they didn't catch the gun in his hand.

Just don't go to town, don't (inaudible) to town.

Then you have me arrested.

No, they won't, how the hell.

Oh, okay.  (inaudible) 'cause the police served me the papers.

The police served me the papers.

I hear you.

'cause the police came to serve me the papers that week.

(inaudible)

(inaudible)

(inaudible) they ain't got shit, they got to throw this shit out.  So just stay hid.

(inaudible)

Stay hid.

Then they have a warrant on me.

(inaudible) what happened.

Drop it.

(inaudible)

I just thought about it (inaudible)

*Id.* at 64-67. McAlpin testified it was Copeland asking Conyers not to appear. *Id.* at 67. McAlpin testified it was his "understanding is what he was wanting her to do was to avoid . . . cooperating in the judicial process by coming in to testify and what he is insinuating is that if you stay hid, he's thinking that . . . law enforcement didn't have enough to prove a case on him" and Copeland saying he was "hoping that the state attorney, the prosecutors will drop the charged because they don't have a witness that will cooperate with them and tell them the true story of what was reported" to law enforcement. *Id.* at 68. The playing of the recording continued:

--then my water bill was $75 (inaudible) I love you.

(inaudible) love you.

Call me back tonight.

(inaudible) they come to your house, goddamn don't go to

(inaudible)

All right, well, I won't.  I love you.

And stay out of damn sight.

I will.

(inaudible) warrant all over the mother f***ing place.

I don't (inaudible) go nowhere.

Well, come down here bring some money today.

All right I'll do (inaudible).

See what you can do.

*Id*. at 70.  McAlpin testified he understood that Copeland said don't go near

the depositions and Conyers replied that she would not.  *Id*. at 71.

The prosecution then played portions from the second call, which

occurred on March 5, 2017:

When do I need to contact you, when they going to, what time
you (inaudible)

Paper last week.

What day?

--the 13th at 1:30.

I go to court on the 14th.

When do you to go court at?

On the 14th.

Don't know why they do it the 13th then.

Well, you might just go up there and just tell them (inaudible)

(inaudible)

Go up there and tell them that you lost your damn mind, you hear me.  Huh?

Huh?

Go up there and tell them that you lost your mind, you didn't know what you were doing.  You hear me?

--(inaudible) that other paper –

Go up there and tell them you lost your mind, you didn't know what you were doing and I took a gun from you and throw it in the woods.  Tell them you had the gun, I took the gun from you and throw it in the woods.  Hear me?

Yes.

And then I probably go home on the 14th.

I hope so.

Since you got to go the 13th.

Say what now?

You lost your mind, about the time when you moved in, you got the gun and I took it from you and throw it in the woods so you, keep you from hurting yourself.

(inaudible)

You better write all this shit down, don't forget.  Then they probably throw that shit out.

*Id.* at 72-74.  McAlpin testified it was Copeland telling Conyers to write it all down so she would not forget and that they would then probably throw it out.  *Id.* at 74.  The call continued:

What?

(inaudible)

What?

If you do that I probably go home on the 14th.

(inaudible)

What?

(inaudible)  I'm through (inaudible)

(inaudible)

(inaudible)

(inaudible) try to (inaudible) all that shit.

Hey.

What?

(inaudible) hear you.

(inaudible)

Now I hear you now.

I hear you real good.

No I couldn't hear you, Baby.

Do that, do that and I probably going to come home on the 14th.  But if you don't go, if you don't come to court they probably just throw it all (inaudible)

I ain't coming to court.

I'm talking about the thing where they told you to come the 13th.

You want me to go to it?

(inaudible) on the 14th, if they hear your part of the story.

That's what she said.

Well, do that and they will probably let me out on the 14th. Probably just throw the shit out.

I hope you do, I'm missing you.

Just don't, just go on to that appointment on the 14th and tell them what, you know –

It's the 13th.

I mean the 13th, I go on the 14th.

Okay, 14th.  What time?

8:00 I think, 8:00 or 8:30.

(inaudible)

Just go there and tell them, you know what I mean.

Okay.

I took the gun, (inaudible)

(inaudible) know that, Baby.

(inaudible) on the paper.

I ain't wrote no paper.

I'm talking about the police, what they wrote.

Said you went there (inaudible)

Yeah.

That's a damn lie.

And got a gun (inaudible)

(inaudible) somebody's mind.

(inaudible)

That's what they got on the paper.  They got all that (inaudible) shit wrong.

(inaudible)

Just do that on the 13th, you do that, just go in there and tell them what you did, I mean, I took the.

(inaudible)

What?

I'm moving.

*Id.* at 74-76.  McAlpin testified Copeland was the one telling Conyers what

to do in that portion of the call and, further, that he himself had not written

down anything in his arrest report that was not true.  *Id.* at 76-77.

The prosecution played for the jury portions of the third call, which was the second call made on March 5, 2017, about forty (40) minutes after the previous call concluded:

Hello.  Hello.

That shit we was talking about, just don't go.

Huh.

Just don't go, stay out of sight, just don't go.

Somebody telling you –

No, that's the best thing to do.

*Id.* at 81.  McAlpin testified that Copeland had now changed his position, "he's done a 180."  *Id.* at 82.  McAlpin testified he things the part about "[s]omebody telling you" refers to other inmates at the jail as "that happens a lot."  *Id.* at 83.  The playing of the call continues:

(inaudible)

Just don't go, don't show up.  Stay out of sight.

(inaudible)

(inaudible)

Stay out of sight.

I know, Babe.

Do that, that, that, that, they will put you in possession of that damn (inaudible)

It sure will.  I wasn't going anyways.

*Id.* at 83-84.  McAlpin testified Conyers said she wasn't going anyways.  *Id.*

at 84.  The call continued:

> (inaudible)  don't go to the mother f***ing (inaudible) and any
> mother f***ing thing.  Try to come to the house.
>
> Huh?
>
> He probably came back to the house and bring you another,
> another paper to come to court.  Just don't –
>
> (inaudible) Renardo Conyer, (inaudible) he says thank you for
> being here.
>
> (inaudible) deposition (inaudible)

*Id.* at 84.  McAlpin testified Conyers was describing how she was served

with the subpoena for the deposition and Copeland was telling her to stay

out of sight and evade the process.  *Id.* at 84-85.  McAlpin testified he was

also scheduled for his deposition on March 13 and he appeared; Conyers

did not appear.  *Id.* at 85-87.  McAlpin testified that, based on what he

heard in these calls and the resulting behavior, he charged Copeland with

tampering with a witness.  *Id.* at 87-88.

The victim, Renardo Mathis Conyers, testified that was her voice in

the recorded calls with Copeland.  Ex. B at 113, 118-119.  She testified that

she missed her deposition on March 13, 2017, because she did not have

transportation.  *Id.* at 109.

At the close of the State's presentation of evidence, defense counsel

moved for a JOA:

> MS. SIMPSON [defense counsel]:  Pursuant to the rules, we at
> this time would move for a directed verdict on the case of
> tampering with a witness on the amended information filed.
> There are three elements that the state has to prove through
> the jury instruction 21.10, tampering with a witness.  And we
> feel that the state has not presented a sufficient amount of
> evidence to constitute a prima facie case.  The witness,
> Renardo Mathis, has listed, she's also Renardo Mathis Conyers
> testified that it was for other reasons she didn't make it to the
> deposition and that she later attended, came to my office and
> gave me a statement and had made numerous phone calls to
> my office.  The state has not proved that the defendant, Mr.
> Copeland, acted with purpose of influencing the witness to
> testify untruthfully, which is part of the elements.  He merely
> knew her for a number of years and she stated because of her
> mental health issue he understood she might need to write this
> down.  In their conversations it can be interpreted several ways.
> But as far as the three elements of tampering the state has not
> proved that he used intimidation or physical force or threatened
> her or attempt to do so.  He was actually in the county jail and
> couldn't do that.  The other thing is engage in misleading
> conduct towards her or offer pecuniary benefit or gain to her
> with the intent to cause her to withhold the testimony.  He did
> tell her not to go but you can also surmise he told her not to go
> because of other reasons, because of her mental health issue,
> because of the fact that she had already gone to someone and
> stated I want to drop the charges, I don't want to pursue this,
> that she was not a cooperative witness.

Ex. B at 120-22.  The prosecutor responded:

> MS. DAFFIN [prosecutor]:  Your Honor, from the state we feel
> like we have submitted a prima facie case in the light most
> favorable to the state for each of the elements related to

tampering with a witness.  The calls themselves would support a prima facie case for elements one and two.  Clearly element three is through the deposition or through the testimony of the chief.  And the remainder, Your Honor, is strictly for the jury. This is an issue to determine whether or not they feel that the defendant's actions met the elements of the offense.  This is a factual issue.  There is certainly a prima facie case to go forward and we would ask the court deny the motion.

*Id.* at 122.  Upon questioning by the judge, the prosecutor further

explained,

I think that the way that the elements are, the way that the state would interpret them and through the case law that I've researched that Mr. Copeland knowingly, purposefully used or attempted to use intimidation, manipulation or engaged in misleading conduct and that he did that with the intent to have her withhold her testimony or not come or testify untruthfully.

*Id.* at 123.  The following then transpired on the record and the judge

denied defense counsel's motion:

THE COURT:  Ms. Simpson, do you agree with that statement of the law?

MS. SIMPSON:  I don't agree the way she interprets the jury instruction and the elements of the case with tampering.

THE COURT:  Show me specifically in the jury instructions which element requires his attempts to be successful?

MS. SIMPSON:  Number two says that Mr. Copeland did so with intent to cause or induce Renardo Mathis Conyers to withhold testimony is the first in A.

THE COURT:  2A.

MS. SIMPSON:  To withhold her testimony or, well, she didn't

have any documents or anything, and also it goes through from
A to F, testify untruthfully in an official investigation or official
proceeding.  That's what the deposition is is an official
proceeding, Your Honor.  But he never asked her to testify
untruthfully.  The state has not proved that.

THE COURT:  But 2D is be absent from the official proceeding.
There is certainly evidence the jury could conclude that –

MS. SIMPSON:  They could conclude, it was a week, eight
days prior to –

THE COURT:  What was eight days prior to?

MS. SIMPSON:  The telephone calls were on March 3rd and
5th.  The deposition was set on the 13th.  She was served back
in February.  She didn't have transportation so he was talking to
her about the deposition and she had already said that she had
gone up there and talked to her.  She referred to her in several
locations.  At one point I think she was referring to Ms.
Wahlquist as far as trying to drop the charges.  She didn't want
to come on her own.

THE COURT:  I don't necessarily disagree with that but that
has nothing to do with whether he intended to try to stop her
from coming.  Looking at the elements of the charge of
tampering with a witness the state has clearly met a prima facie
case and it's a question for the jury to decide.

*Id.* at 123-24; *see id.* at 168-69 (jury instructions given by trial judge:  "To

prove the crime of tampering with a witness the state must prove the

following three elements beyond a reasonable doubt.  Number one, William

Tyrone Copeland knowingly used or attempted to use intimidation against

Renardo Mathis Conyers or engaged in misleading conduct towards

Renardo Mathis Conyers.  Number two, William Tyrone Copeland did so

with intent to cause or induce Renardo Mathis Conyers to withhold

testimony or withhold a record, document or other object from an official

investigation or official proceeding or evade legal process summoning her

to appear as a witness in an official investigation or official proceeding or

be absent from an official proceeding to which she had been summoned by

legal process or testify untruthfully in an official investigation or an official

proceeding.  Number three, the official proceeding affected involved the

investigation or proceeding of a second degree felony.").

The record and Florida law support the state trial court's

determination.  In her opening statement, the prosecutor asserted

Copeland tampered with a witness when he told Conyers not to go to her

deposition on March 13, for which she had received a subpoena and which

constituted part of an official proceeding in a criminal case involving a

second degree felony.  Ex. B at 28.  Chief McAlpin testified that he had

arrested Copeland in January 2017 and charged him with a second degree

felony.  *Id.* at 50-51.  Pertinent portions of the calls between Copeland and

Conyers, as set forth above, were played for the jury during McAlpin's

testimony.  Construing the facts most favorable to the State, the

prosecution presented a prima facie case of tampering with a witness.

The jury could reasonably have concluded from the aggressive words

and manner exhibited by Copeland in the calls that he knowingly engaged in intimidation to get Conyers to not attend her deposition, provide untruthful testimony, and/or avoid service of process.  *See, e.g.*, Pickett, 254 So. 3d at 1169-70; *see generally* United States v. Hicks, 980 F.2d 963, 974 (5th Cir. 1992) (rejecting defendants' argument, in case involving intimidation of flight crew, that "mere words – at least words that do not constitute a direct threat – cannot constitute intimidation").

The jury could have also reasonably concluded that Copeland engaged in misleading conduct by telling Conyers that she could not be arrested or penalized for failing to attend the deposition for which she had received a subpoena.  *See* § 914.22(1), Fla. Stat. (2016) (defining "misleading conduct" as "(a) [k]nowingly making a false statement; (b) [i]ntentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact and thereby creating a false impression by such statement; . . . or (e) [k]nowingly using a trick, scheme, or device with intent to mislead"); Ex. B at 169-70 (jury instruction on "misleading conduct," tracking language of statute).  McAlpin testified that a person can be held in contempt of court and jailed for failure to appear at the deposition for which a subpoena has issued.  Ex. B at 57.

Based on the foregoing, Petitioner Copeland did not "fairly present" a federal claim to the Florida courts and he is now procedurally barred from asserting it.  *See* 28 U.S.C. § 2254(b)(1).  If the merits are considered, Copeland has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).

## Conclusion

Petitioner William Tyrone Copeland is not entitled to federal habeas relief.  Accordingly, it is respectfully **RECOMMENDED** that Copeland's § 2254 petition, ECF No. 1, be **DENIED**.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a

constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on April 27, 2020.

**S/  Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  **Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.**  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.